OPINION
{¶ 1} Defendant Douglas Carter appeals a judgment of the Court of Common Pleas of Stark County, Ohio, convicting and sentencing him for one count of robbery in violation of R.C. 2911.02. Appellant assigns six errors to the trial court:
 {¶ 2} "The trial court abused its discretion in permitting the introduction of out of court statements and a photo lineup identified as using other police records to prove appellant's identity thereby denying appellant's constitutional right to a fair trial.
 {¶ 3} "Appellant was denied a fair trial in violation of the United States and Ohio constitutions due to the ineffective assistance of trial counsel.
 {¶ 4} "The cumulative effect of errors during the trial resulted in appellant being denied a fair trial.
 {¶ 5} "The trial court abused its discretion in failing to suppress the unduly suggestive out of court identification of appellant.
 {¶ 6} "The verdict is against the manifest weight and sufficiency of the evidence and contrary to law.
 {¶ 7} "The imposition of a maximum sentence is against the manifest weight of the evidence and contrary to law."
 {¶ 8} At trial, the State presented evidence appellant went to Spee-D-Foods at around 9:30 or 10:00 p.m. Appellant bought a pack of gum. He came in a second time shortly thereafter, but apparently left without purchasing anything. Around 10:30 p.m., appellant came in a third time, walked straight to the counter, and told Rebekah Jones, the cashier, to give him the money in the register. The robber indicated he had a gun.
 {¶ 9} After Jones gave him the money, she told the assistant manager she had been robbed. The assistant manager did not witness the robbery, but pressed the alarm button and locked the doors.
 {¶ 10} Canton Police Office Mike Nordick investigated the robbery, interviewed Jones and her manager, and took custody of the surveillance camera video tape which showed the robbery.
 {¶ 11} Office Nordick took the video tape to the Canton Police Department, and turned it over to Sergeant Jack Angelo, the officer assigned to investigate the case. Angelo viewed the video tape and made four still photographs from the tape. The photographs were given to various patrol officers, and a copy of one of the still photographs was published in the Canton Repository. Several of the patrol officers identified the picture as being that of the appellant, so Sergeant Angelo obtained appellant's photograph from the Stark County Jail archives, and prepared a photographic lineup to show to Jones.
 {¶ 12} The next day, Sergeant Angelo went to Jones' home to show her the photographic lineup. Jones selected appellant's photograph from the lineup. While Angelo was still at Jones' home, he received information that appellant was at the parole office. Appellant was taken into custody there. Angelo testified when appellant was arrested, he still had the same type of distinctive beard as worn by the robber in the video tape taken from the store surveillance camera.
 {¶ 13} Prior to the trial appellant offered an alibi defense, but at the close of the State's case, appellant moved to withdraw the alibi defense, and rested without introducing any testimony. After the jury found appellant guilty as charged, the court proceeded to sentence him to the maximum, a definite sentence of eight years.
 I {¶ 14} In his first assignment of error, appellant argues the court should not have allowed the prosecution to introduce out-of-court statements and a photo lineup which used police records.
 {¶ 15} Regarding the police photo used in the photo array show to Jones, appellant cites us to State v. Breedlove (1971), 26 Ohio St.2d 178,271 N.E.2d 238. In Breedlove, the Ohio Supreme Court found using photos with police identification numbers is improper because it presents the reasonable inference the accused has had a prior criminal involvement. This violates the "other bad acts" rule, which prohibits the introduction of evidence tending to show an accused has committed another crime independent of the offense for which he is on trial, Id.
 {¶ 16} The State argues Breedlove is distinguishable from the case at bar because there are no identifying police numbers on appellant's photograph. Appellant is not depicted in jail clothing.
 {¶ 17} The trial court gave a curative instruction to the jury regarding the photograph. Specifically, the court reminded the jurors that "all kinds of photographs" are kept on record.
 {¶ 18} The out-of-court statements appellant argues are inadmissible came when Officer Angelo testified he passed out copies of the photographs taken from the video tape to officers at roll call. Officer Angelo testified a couple of the officers informed him they believed the photograph was of the appellant. Officer Angelo further testified after the newspaper ran the photograph, the police department received a few anonymous phone calls identifying the photograph as that of appellant.
 {¶ 19} At that point, and without objection, the court intervened. The court informed the jury it must understand that regardless of any phone calls made, it could not assume the identification was correct and the photograph was of the appellant. The court informed the jury the only purpose for this testimony was to show how the officer went from one stage of the investigation to another.
 {¶ 20} Thereafter, upon questioning by the State, Officer Angelo testified no one had ever identified the photograph as anyone other than the appellant.
 {¶ 21} The State directs us to Evid. R. 801(C), which defines hearsay as a statement other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. The State argues Sergeant Angelo's statement was not offered to prove appellant was actually the person depicted in the photograph, but rather simply offered to explain how the investigation proceeded. The State suggests in a criminal trial, the police officers generally testify and testimony about the investigation activities is not hearsay.
 {¶ 22} Regarding the photographs, the State cites us to State v.Wilkinson (1971), 26 Ohio St.2d 185, 271 N.E.2d 242. Wilkinson, which was announced the same day as Breedlove, held if police identification numbers had been removed from police photographs of the defendant, then the photographs were not suggestive of prior criminal involvement and were thus admissible.
 {¶ 23} We find the trial court did not err in permitting the State to introduce the above evidence, particularly in light of the curative instructions.
 {¶ 24} The first assignment of error is overruled.
 II {¶ 25} In his second assignment of error, appellant argues he was not accorded the effective assistance of trial counsel. In order to prevail on the basis of ineffective assistance of counsel, appellant must demonstrate his counsel's performance fell below an objective standard of reasonableness, and the deficient performance prejudiced him to the extent of rendering his conviction unreliable, see Strickland v.Washington (1984), 466 U.S. 668, 104 Sup. Ct. 2052; State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 26} Specifically, appellant argues trial counsel omitted two elements of his defense, namely failing to object or request a curative instruction on the State's introduction of testimony appellant was on parole at the time of the offense, and secondly, in withdrawing the alibi defense, and failing to present the testimony of appellant's father, whom appellant asserts would have testified to appellant's alibi.
 {¶ 27} Appellant argues his counsel should have requested a curative instruction when the State introduced testimony appellant was at the parole office when he was arrested. Appellant argues this would lead the jury to believe appellant was on felony parole for an unrelated offense, which was improper and prejudicial.
 {¶ 28} Specifically, Sergeant Angelo testified while he was at Jones' residence, he received a page informing him appellant was at the parole office. Sergeant Angelo did not testify appellant was on felony parole.
 {¶ 29} Outside the presence of the jury, the court discussed the issue of Sergeant Angelo's testimony with counsel. The court noted on the record it had discussed the matter with defense counsel and had asked counsel if he wanted a curative instruction. Counsel responded he had discussed the matter with his client, and believed the detective's testimony simply passed over the issue of the parole office, and did not comment further about it. The court asked defense counsel if he wished to just "leave it alone" and defense counsel response, "Yes, your Honor."
 {¶ 30} We find from the above, defense counsel made a strategic decision not to highlight appellant's presence at the parole office. As the State argues, this court cannot find ineffective assistance of counsel on an act or omission which might be considered sound trial strategy, see State v. Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128.
 {¶ 31} Regarding appellant's alibi defense, in his opening statement defense counsel informed the jury it would hear testimony from appellant's father regarding appellant's whereabouts at the time of the robbery. In fact, during the State's case in chief, Officer Angelo testified he had spoken with appellant's father, who told the officer appellant was not the robber. Appellant argues when counsel failed to present the promised testimony, this could only have left jurors questioning appellant's whereabouts at the time of the crime.
 {¶ 32} The State replies the trial court instructed the jury statements of trial counsel are not evidence, but only designed to assist the jury in reviewing the evidence. The State suggests appellant withdrew his alibi motion without calling any witnesses as part of a sound trial strategy, depending upon what testimony of appellant's father would have been.
 {¶ 33} Our review of the record leads us to conclude the defense counsel was not ineffective.
 {¶ 34} The second assignment of error is overruled.
 III {¶ 35} In his third assignment of error, appellant argues the cumulative effect of errors resulted in his being denied a fair trial. InState v. DeMarco (1987), 31 Ohio St.3d 191, 509 N.E.2d 1256, the Ohio Supreme Court held:
 {¶ 36} "If violations of the rules of evidence singularly do not rise to the level of prejudicial error, they may nevertheless, when added together, deprive the defendant of his constitutional right to a fair trial."
 {¶ 37} Appellant lists the cumulative errors being the introduction of inadmissible hearsay regarding appellant's identity; improper introduction of other acts evidence to prove his identity; counsel's failure to request a curative instruction regarding appellant's parole status; and counsel's failure to present appellant's alibi defense.
 {¶ 38} DeMarco stands for the proposition that numerous harmless errors may add up to harmful error. Because we found in I and II, supra, there was no error of any sort, we conclude DeMarco does not apply.
 {¶ 39} The third assignment of error is overruled.
 IV {¶ 40} In his fourth assignment of error, appellant argues the court abused its discretion in failing to suppress the unduly suggestive out-of-court identification of the appellant. Appellant had moved to suppress the photographic lineup as so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, see Simmons v United States (1968), 390 U.S. 337,88 Sup. Ct. 967. In Neil v. Biggers (1972), 409 U.S. 188, 98 Sup. Ct. 375, the United States Supreme Court instructed us to review the totality of the circumstances surrounding the identification. The Supreme Court listed certain factors regarding the reliability: (1) the length of time the witness was able to see the person who was committing the crime; (2) how attentive the witness was during the crime; (3) the degree of accuracy of the witness' description of the criminal immediately after the crime; (4) how certain the witness was about the identification of the accused; (5) how much time expired between the time of the crime and the time the witness identified the perpetrator.
 {¶ 41} Appellant argues in this case, the eyewitness had seen the perpetrator only briefly on three occasions that evening. Jones testified the robber was a bald black male wearing a black ski jacket. She did not describe what the State has characterized as "distinctive" facial hair.
 {¶ 42} Appellant also challenges the photographic array Jones viewed two days later. Appellant argues only two of the photographs were of bald black males, although our examination of the photographs indicates each could be described as at least having a receding hairline.
 {¶ 43} The State points out Jones positively identified the appellant at trial as the man who robbed her.
 {¶ 44} At trial, the jury viewed the surveillance video tape of the robber and the still photographs taken from the video tape. This court has viewed the photographs, and find them remarkably clear. The jury had the opportunity to hear Jones' testimony, and to view the video tape and photographs and compare them to appellant during the trial.
 {¶ 45} The Supreme Court has frequently reminded us that questions regarding the weight of the evidence and the credibility of the witnesses are issues to be decided by the trier of the facts, see State v DeHass
(1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 46} We find the trial court did not err in overruling the motion to suppress this evidence.
 {¶ 47} The fourth assignment of error is overruled.
 V {¶ 48} In his fifth assignment of error, appellant challenges the weight and sufficiency of the evidence presented against him.
 {¶ 49} Appellant correctly cites State v. Thompkins (78), 380,1997-Ohio-52, 678 N.E.2d 541, as the seminal case comparing the concepts of weight and sufficiency of the evidence. In Thompkins, the Supreme Court explains sufficiency is a question for the trial court, and deals with whether the State presented sufficient evidence on each element of the crime charged so that the court may refer the matter to the jury. Weight of the evidence, on the other hand, refers to the determination of the jury regarding the amount of evidence offered at trial in support of one side of the case. Evidence is sufficient if any rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt, Id. at 386-387. To succeed on a manifest weight of the evidence claim, the reviewing court must be convinced the jury so lost its way that its resolution of the case resulted in a manifest miscarriage of justice, Id. at 387. Appellant correctly lists the elements of robbery as attempting to commit a theft offense, or fleeing immediately after the attempt or offense having a deadly weapon on or about his person or under his control, and inflicting, attempting to inflict, or threatening to inflict harm upon another.
 {¶ 50} As the State maintains, it presented evidence, which, if believed by the jury, would show appellant threatened Jones with a gun in order to obtain money from the cash register.
 {¶ 51} We find there is sufficient, competent and credible evidence going to each element of the crime charged, and thus, the jury's verdict is sustained by the manifest weight and sufficiency of the evidence.
 {¶ 52} The fifth assignment of error is overruled.
 VI {¶ 53} Lastly, appellant argues the trial court erred in sentencing him to the maximum sentence available.
 {¶ 54} Pursuant to R.C. 2929.14, a trial court may impose the longest prison term upon offenders who commit the worst form of the offense, or who pose the greatest likelihood of recidivism.
 {¶ 55} At the sentencing hearing, the court noted appellant is a multi-time offender, who had served time the State prisons before, and was in fact on parole at the time this offense was committed. The court found appellant poses the greatest likelihood of committing future crimes, based upon his past record of prior robbery convictions. The court found if he were not institutionalized appellant would commit future crimes. The court also found to do anything other than sentence appellant to the maximum term would demean the seriousness of the offense and would not be adequate to punish him or deter others from committing similar crimes.
 {¶ 56} The trial court's judgment entry stated the appellant poses the greatest likelihood of recidivism and has committed the worst form of the offense.
 {¶ 57} Our review of the record before us leads us to conclude the trial court did not err in imposing the maximum sentence for this offense.
 {¶ 58} The sixth assignment of error is overruled.
 {¶ 59} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed, and the cause is remanded to that court for execution of sentence.
By Gwin, P.J., and Farmer, J., concur.
Hoffman, J., concurs separately.
topic: evidence — suppression — maximum sentence.